BAKER, JUDGE:
Claimants brought this action to recover costs incurred from water damage to their real estate and personal property allegedly due to the negligent maintenance of the drainage system along County Route 26 in Oakvale, Mercer County. At the hearing of this claim, the Court amended the style of the claim to include both property owners, Bobby Wayne Hudnall and Maureen Hudnall, as the claimants. Respondent is at all times herein responsible for the maintenance of County Route 26 in Mercer Comity. The Court is of the opinion that the claimants may make a recovery in this claim for the reasons stated more fully below.
Claimants’ property is located on Hatcher Road, designated as County Route 26, in Oakvale, Mercer County. County Route 26 is a one-lane, paved road for approximately the first two or three miles, but it is a gravel road near claimants’ home and remains gravel for approximately the next two miles. Claimants’ property consists of approximately sixty acres which fronts along County Route 26. They purchased this property in 1998 with three houses and four buildings located on it. They have resided in the wood and cinder-block house, referred to as the “main house,” sincel998. It is approximately twelve years old. There is an old log house located just north of the main house and a mobile home located at the far' north end of the property. All three dwellings front County Route 26. The main home in which claimants reside is located approximately twenty-five to thirty feet from County Route 26. There is a graded *93 embankment between the road and their home of about fifteen feet. There are also the “pool house”, a log smoke house, a chicken house, and a turkey house located on claimants’ property. All of these structures are located below County Route 26. Hatcher Creek is below and at a distance of approximately eighty feet from claimants’ home and this creek flows the entire length of claimants’ property. The creek flows behind all three of claimants’ dwellings. Prior to the flooding, claimants had a small bridge that crossed Hatcher’s Creek behind the log cabin that led to the well house on the opposite side of the creek. Claimants’ driveway intersects with County Route 26 in front of the main house and it turns into a one-lane road which extends north of the main house to the log house and ends at their mobile home. There is a ditch line on the opposite side of County Route 26 away from claimants’ property. There are also five different culverts on the opposite side of the road near the ditch line both north and south of claimants’ property. However, two culverts are at issue in this claim. Culvert number one is located almost directly opposite claimants’ driveway and is approximately forty or fifty feet from claimants’ main home. Culvert number two is a few yards directly south of culvert number one.
Mr. Hudnall testified that he maintains his own drainage structure on his property. He testified that there is a ditch line that begins at the driveway and extends adjacent to the main home and empties into an eighteen inch culvert beneath the portion of the driveway that extends from the main home towards their mobile home. This culvert extends from beneath the driveway and empties into Hatcher Creek. Mr. Hudnall stated that this drainage system is intended to capture excess water flowing from the road down hill onto his property. He stated that claimants’ real and personal property have been damaged by three different floods which he alleges were caused by respondent’s failure properly to maintain its drainage system along County Route 26. According to Mr. Hudnall, the first flood occurred on May 15,2001. The second flood occurred on July 8,2001, and the third flood occurred on or about May 3,2002. Each of the three floods caused substantial damage to claimants’ three homes. Claimants submitted numerous photographs into evidence at the hearing which depicted a substantial amount of flood water and debris flowing from County Route 26 down their driveway and front yard. The photographs also demonstrate the amount of water which flowed into the basement of their log home causing significant damage to the structure, plumbing system, various personal property items, and the hot water tank. In addition, Mr. Hudnall stated that during the flood on July 8, 2001, the water pooled near culvert number one on the opposite side of the road from claimants’ driveway. He estimated that the water was three to four inches deep. Mr. Hudnall testified that claimants sustained damage to all seven structures on their property. Claimants’ bridge which crossed Hatcher Creek was destroyed and their well system and septic system were damaged. As a result of the floods, claimants’ property sustained damages.
Claimants presented an estimate to the Court from a construction company for the damages sustained which included repairs to the floors, walls, kitchen, and foundation of the log home. The same estimate covered repairs to a deck and the swimming pool, and the replacement of the bridge for a total amount of $18,000.00. Claimants also submitted an estimate from the same construction company for the removal of debris, waste and destroyed furnishings as necessary, as well as the pouring of concrete in the amount of $ 1,950.00. According to Mr. Hudnall, FEMA compensated claimants for the damages to their well and septic systems after the first flood in the amount of $7,000.00. This is the only compensation which claimants’ have received from FEMA. However, he testified that the septic system was destroyed in another flood and it needs to be *94 repaired again, and FEMA has not reimbursed claimants for this work. Claimants submitted a repair estimate for the septic system in the amount of $896.50, and a repair estimate in the amount of $2,026.00 for repairs to the drain pipes and the driveway. Thus, claimants submitted a total estimate of damages sustained in the amount of $22,872.50. However, claimants agreed at the beginning of the hearing to have their claim heard by one Judge which limits any recovery which the Court may award to the maximum of $19,999.99.
Claimants assert that respondent negligently maintained the drainage system along County Route 26, and that this negligence was the proximate cause of the flood damages which claimants incurred.
Respondent did not present any witnesses or evidence in this claim. However, respondent attempted to establish its position through the cross-examination of claimants’ witnesses that its actions or failure to act were not the proximate cause of claimants’ damages, but rather, claimants’ damages were caused by three unusually heavy rainstorms that occurred throughout most of the State. Thus, according to respondent, there was nothing it could have done to prevent what were alleged to be “Acts of God.”
Mr. Hudnall testified that he had contacted respondent numerous times, beginning in October 1998, about the poor condition of the culverts and the drainage system along County Route 26 and the flooding that was occurring to his property. Claimants introduced telephone records into evidence at the hearing which corroborated testimony that there were telephone calls made from claimants’ home to respondent’s office in Charleston. Mr. Hudnall also testified that one of respondent’s engineers came to claimants’ property and observed the damaged culverts. According to Mr. Hudnall, respondent informed him that the culverts would be repaired, but this was not done. Mr. Hudnall testified that the two culverts at issue were not properly maintained. Photographs in evidence depict that culvert number one was “smashed”. Mr. Hudnall testified that the culvert was smashed by one of respondent’s grader operators while grading the road. Further, Mr. Hudnall stated that he opened the culvert up just enough to allow some water to flow through, but that respondent’s grader operator ¿rove through and flattened the culvert again preventing the water from flowing through it. In addition, numerous witnesses who live along or otherwise travel County Route 26, testified that the drainage system was in poor condition. John Atkins, an employee of “Long Term Recovery,” a group which assists flood victims, went to claimants’ residence during the May 2002 flood. He testified that there was a large amount of water and debris near culvert number one located across the road from claimants’ driveway. He also testified that the culvert was mashed down and that claimants and other individuals were trying to open the culvert to allow the water to flow out. It was Mr. Atkins’ opinion that had the culverts been operating properly there would have been a lot of water eliminated from the road and claimants’ property. James Bryant Jr., a school bus driver for Mercer County, testified that he traveled County Route 26 as part of his assigned route for at least six years, including the time period at issue. He stated that the ditch line on the right side of the road opposite claimants’ property was often saturated. He stated that there were numerous areas along the ditch line of the road near claimants’ property where water would not drain properly, but instead pooled up. Mr. Bryant testified that he was afraid to maneuver the school bus over to the edge of the road due to the ditch line being soggy. He estimated that the ditch line was in a poor condition beginning just south of claimants’ property and continuing approximately two miles north. In addition, there was testimony from local residents who live along County Route 26 that the ditch line and culverts have *95 been in poor condition for a substantial amount of time. James Ruble, a local resident who lives approximately 1500 feet south of claimants’ property, testified that the ditch line along County Route 26 just below his property cannot be seen because it is filled up with mud and debris.
Respondent attempted to establish that the flooding which occurred at claimants’ property on all three occasions was the result of unusually heavy rainfalls that occurred not only at the location of claimants’ property, but throughout the State. Respondent’s position is that this constituted an “Act of God” and that respondent was therefore not responsible. One of the witnesses, James Bryant, testified that he was not aware that there was a major flooding event throughout the State on July 8, 2001. He only recalls that there was flooding in general in May 2001. John Atkins also testified that he was aware that there was major flooding in May 2001 in other areas of the State and he was also aware of major flooding on July 8, 2001, in other areas including the Matoaka area in Mercer County. Mr. Atkins also testified that there was a minor flood in May 2002. In addition to observing flooding at claimants’ property, he also observed flooding in Princeton and the surrounding area. Mr. Ruble also stated that he was aware that there was major flooding in May 2001, and on July 8, 2001. He also recalls that there was some flooding in the Princeton area as well as the claimants’ property in May 2002. Brian Jones, who lives approximately one and one-half miles south of the claimants, also testified that he is generally familiar with the flooding in May 2001, and he recalls the flooding in Mercer County in general on July 8, 2002. However, he was unsure as to whether or not there was flooding in the Princeton area in May 2002. Further, Mr. Hudnall testified that he is aware that all three floods at issue occurred at the same time many other parts of the State were being flooded. However, he was of the opinion that this was not the situation at the location of his property, rather, he categorized the rain as being heavy rain.
To hold respondent liable for damages caused by inadequate drainage, claimant must prove by a preponderance of the evidence that respondent had actual or constructive notice of the existence of the inadequate drainage system and a reasonable amount of time to take corrective action. Ashworth v. Division of Highways, 19 Ct. Cl. 189 (1993); Orsburn v. Division of Highways, 18 Ct. Cl. 125(1991). Further, in order for respondent successfully to assert the “Act of God” defense, it must establish by sufficient evidence that the unusually severe flooding that was allegedly occurring in other areas of the State was in fact occurring in like manner and circumstances at the location of the incident at issue.
In the present claim, the Court is of the opinion that the proximate cause of the damage to claimants’ property was respondent’s failure to maintain an adequate drainage system for surface water flowing from County Route 26. The evidence established that respondent knew of the drainage problem at this location since at least October 1998. However, respondent failed to provide an adequate drainage system despite numerous requests for help from the claimants and other neighbors who live along County Route 26. Claimants established that an excessive amount of water flowed from County Route 26 onto their property causing damage to the land, three homes, and personal property. Further, the Court is of the opinion that respondent failed to establish that the flooding which occurred at claimants’ property was the result of an “Act of God.” The fact that other areas of the State or the surrounding counties were having unusually heavy rainfalls and flooding does not establish that the same or similar amount of rainfall and flooding also occurred at claimants’ property. Respondent failed to establish that there were any unusually heavy rainfalls at the location of claimants’ property. There was no evidence *96 as to how much rainfall was recorded in and around claimants’ property during any of the three floods. Thus, respondent cannot rely on the “Act of God” as a defense in this claim. The Court has determined that the claimants herein may make a recovery for the damages proximately caused to their property in the amount of $19,999.99.
In accordance with the finding of facts and conclusions of law as stated herein above, the Court is of the opinion to and does make an award to the claimants in the amount of $19,999.99.
Award of $19,999.99.